IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IGLESIA PENTECOSTAL
CASA DE DIOS PARA LAS
NACIONES, INC., et al.,

    **Plaintiffs,**

    v.

JEH JOHNSON, Secretary of the
United States Department of Homeland
Security, et al.,

    **Defendants.**

Case No. 15-CV-2612-DDC-GEB

## MEMORANDUM AND ORDER

Plaintiffs Iglesia Pentecostal Casa De Dios Para Las Naciones, Inc. ("Iglesia") and Israel Medina Valdez ("Mr. Valdez") seek review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, of a United States Citizenship and Immigration Services ("USCIS") decision denying Mr. Valdez's R-1 immigrant visa petition. Plaintiffs have filed a "Brief in Support of Judgment in Favor of Plaintiffs" (Doc. 11) that asks the court to enter a declaratory judgment finding that the USCIS's decision was arbitrary and capricious, contrary to law, and substantially burdens plaintiffs' exercise of their genuinely-held religious belief in violation of the Religious Freedom Restoration Act ("RFRA"). *Id.* at 1. Plaintiffs also seek an order remanding the matter to the agency to correct its decision and to grant the visa petition. *See id.* After reviewing the administrative record and considering both parties' arguments, the Court affirms the USCIS's decision. The court explains why below.

**I.     Background**

Iglesia is a Pentecostal church located in Kansas City, Kansas.  Iglesia holds a sincere religious belief that the church must live by faith.  It bases this belief on its understanding of the teachings of Jesus Christ as written in the Bible.  Iglesia adheres to this belief by basing its employees' compensation, in part, on an offering given directly by its parishioners.

On May 23, 2011, Iglesia filed with the USCIS an application for an R-1 visa on behalf of its sound and music director, Mr. Valdez, to work temporarily in the United States.  By statute, an alien may obtain an R-1 visa as a "nonimmigrant alien" if he or she:  (1) "for the 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States[;]" and (2) "seeks to enter the United States for a period not to exceed 5 years" to work for the religious organization "in the vocation as a minister," "in a professional capacity in a religious vocation or occupation," or "at the request of the [religious] organization in a religious vocation or occupation."  *See* 8 U.S.C. § 1101(a)(15)(R) & 1101(a)(27)(C)(ii)(I)–(III).  The implementing regulations require a religious organization, when it petitions on behalf of an alien to obtain an R-1 visa, to "state how the petitioner intends to compensate the alien, including specific monetary or in-kind compensation, or whether the alien intends to be self-supporting."  8 C.F.R. § 214.2(r)(11).  The religious organization also must "submit verifiable evidence explaining how the petitioner will compensate the alien or how the alien will be self-supporting."  *Id.*  This evidence "may include past evidence of compensation for similar positions; budgets showing monies set aside for salaries . . . or other evidence acceptable to USCIS."  8 C.F.R. § 214.2(r)(11)(i).

Before Iglesia filed the application on behalf of Mr. Valdez, he had worked for more than two years for a Pentecostal church in the Dominican Republic. This church was affiliated with the Assemblies of God. Iglesia thus contended that Mr. Valdez satisfied the two-year membership requirement found in 8 U.S.C. § 1101(a)(15)(R)(i).

After Iglesia filed the visa application on behalf of Mr. Valdez, the USCIS sent it a Request for Evidence on July 26, 2011. The Request for Evidence sought, among other things, evidence from the church establishing that it had the ability to compensate Mr. Valdez. On October 15, 2011, Iglesia submitted a response to the Request for Evidence that included copies of its federal tax forms, bank statements, and a profit and loss statement for 2010.

In November 2011, the USCIS denied the visa application for one reason: It concluded that Iglesia had not established that the church where Mr. Valdez had worked previously was the same denomination as Iglesia. Thus, the USCIS determined that Iglesia had failed to show that Mr. Valdez met the two-year membership requirement of 8 U.S.C. § 1101(a)(15)(R)(i), to obtain an R-1 visa. The USCIS's decision did not address whether Iglesia had the ability to compensate Mr. Valdez. The decision noted, however, that Iglesia had submitted all evidence requested by USCIS.

In December 2011, Iglesia filed a Motion to Reopen/Reconsider the USCIS's decision. The USCIS denied the motion on March 8, 2012. The USCIS determined that Iglesia had neither (1) provided new facts or other documentary evidence to support its argument that the church that previously employed Mr. Valdez was of the same denomination as Iglesia; nor (2) stated reasons for reconsideration supported by "precedent decisions." The USCIS thus upheld the decision denying the R-1 visa application. Iglesia filed a second Motion to Reopen/Reconsider in April 2012, which the USCIS denied on June 19, 2012.

Iglesia appealed the decision to the Administrative Appeals Office ("AAO"). On May 16, 2013, the AAO dismissed the appeal. In its decision, the AAO concurred with the underlying USCIS decision that Iglesia had failed to establish that Mr. Valdez was a member of its denomination for the two years before Iglesia filed the visa application on his behalf. The AAO also denied the appeal for an independent and alternative reason. It concluded, for the first time during the agency proceeding, that Iglesia had failed to establish how it would compensate Mr. Valdez. After reviewing the evidence Iglesia had submitted, the AAO determined that Iglesia did not have sufficient funds to pay Mr. Valdez the proffered salary of $26,000,[1] and thus it had failed to establish that it had the ability to pay Mr. Valdez.

On October 15, 2013, Iglesia and Mr. Valdez filed suit in our court challenging the visa denial. *See Iglesia v. Beers*, No. 13-2532-RDR-KGS. The AAO reopened the matter in December 2013, and Iglesia and Mr. Valdez voluntarily dismissed the federal case without prejudice. After reopening the agency proceeding, the AAO allowed Iglesia to submit additional evidence of its ability to compensate Mr. Valdez because the AAO had concluded that the administrative record, as it existed then, lacked verifiable evidence that it could compensate Mr. Valdez the proffered salary. In response, Iglesia submitted additional information to the AAO, including a balance sheet, profit and loss statements, contracts with other entities, and bank statements, which, Iglesia argued, demonstrated its ability to pay Mr. Valdez.

On June 18, 2014, the AAO issued a decision affirming the denial of the visa petition. In its decision, the AAO considered the additional evidence, but still concluded that Iglesia had

---

[1] In its application, Iglesia stated that it intended to compensate Mr. Valdez wages of $500 per week and "transportation." Doc. 7-2 at 198 (Administrative Record ("AR") at 959). It also provided to the agency an employment contract stating that Mr. Valdez "shall be entitled to a salary of [ ] $26,000 yearly." *Id.* at 230 (AR at 991) (emphasis omitted).

4

failed to establish its ability to provide the proffered compensation to Mr. Valdez at the time of filing the petition.

Iglesia filed a Motion to Reconsider and Reopen. This motion: (1) argued that the agency had violated the law by imposing an unnecessarily rigid interpretation of the regulation's "ability to pay" requirement when the statute contains no similar requirement; and (2) sought an exemption of the "ability to pay" requirement under RFRA because it based Mr. Valdez's compensation, in large part, on parishioners' contributions in the form of a "love offering," which is consistent with Iglesia's religious belief to "live by faith." With its motion, Iglesia included a letter from Pastor Carlos Harrigan explaining the biblical basis for the "live by faith" belief. The letter also described the church's historical practice of collecting a love offering from the congregation that Iglesia provided directly to Mr. Valdez instead of reporting the love offering as income on Iglesia's financial reports.[2]

On November 4, 2014, the AAO issued a decision denying the motion to reopen and reconsider. It concluded that Iglesia still had not proffered verifiable evidence establishing how it would compensate Mr. Valdez. It also rejected Iglesia's exemption request under RFRA. It noted that Iglesia raised no RFRA concerns until its appeal, and it determined that the AAO lacked discretion to set aside the compensation requirement absent a judicial finding that the current regulations violate RFRA. This lawsuit followed. On February 19, 2015, Iglesia filed a Complaint (Doc. 1) in our court, challenging the denial of the R-1 visa application.

---

[2] Defendants assert that the love offerings are reflected as income on Iglesia's profit and loss statements. Indeed, the 2014 profit and loss statement includes a budgeted love offering of $2,000 per month for Mr. Valdez, but it does not reflect whether the church realized any income for such love offerings. Doc. 7 at 57 (AR at 56). The 2013 profit and loss statement reflects income of $12,558 for a love offering, but it does not identify the recipients of this offering. *Id.* at 97 (AR at 96).

5

## II. Standard of Review

Plaintiffs have filed a "Brief in Support of Judgment in Favor of Plaintiffs" (Doc. 11), seeking review under the APA of the USCIS's decision denying Mr. Valdez's R-1 immigrant visa petition.[3] The APA grants federal courts authority to review agency decisions. *See* 5 U.S.C. § 702. The reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Kobach v. Election Assistance Comm'n*, 772 F.3d 1183, 1197 (10th Cir. 2014) (citations omitted). When a court applies the "arbitrary and capricious" standard of review under the APA, it "must 'ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made.'" *Kobach*, 772 F.3d at 1197 (quoting *Aviva Life & Annuity Co. v. FDIC*, 654 F.3d 1129, 1131 (10th Cir. 2011)).

The Supreme Court describes the scope of review under this standard as a "narrow" one, and it cautions that a court must not "substitute its judgment for that of the agency." *Judulang v. Holder*, 132 S. Ct. 476, 483 (2011) (citations and internal quotation marks omitted); *see also Kobach*, 772 F.3d at 1197 ("This [arbitrary and capricious] standard of review is very deferential to the agency's determination, and a presumption of validity attaches to the agency action such

---

[3] Plaintiffs' brief is docketed as a motion for summary judgment. The Tenth Circuit, however, has "explicitly prohibit[ed]" the use of summary judgment motions in actions seeking judicial review of an agency action under the APA. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). The Circuit reasoned that the summary judgment process "is inconsistent with the standards for judicial review of agency action under the APA" because summary judgment "permits the issues on appeal to be defined by the appellee and invites (even requires) the reviewing court to rely on evidence outside the administrative record." *Id.* 1579–80.

Instead, the Circuit has instructed district courts to process reviews of agency actions as appeals. *Id.* at 1580. Consistent with *Olenhouse*, the court does not consider plaintiffs' motion as one for summary judgment under Fed. R. Civ. P. 56. The court will treat plaintiffs' motion as an appeal of the USCIS's decision seeking review under the APA. *See Staso v. United States*, 538 F. Supp. 2d 1335, 1337–38 (D. Kan. 2008) (holding that the court could not entertain the parties' cross summary judgment motions in an administrative appeal of an IRS determination but treating the motions as briefs supporting or opposing the appeal of the administrative decision).

that the burden of proof rests with the party challenging it." (citations and internal quotation marks omitted)). Despite this deferential standard, a court's review still plays an important role by "ensuring that agencies have engaged in reasoned decisionmaking." *Judulang*, 132 S. Ct. at 483–84. This standard requires a court to "assess, among other matters, whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 484 (citations and internal quotation marks omitted).

### III.    Analysis

Plaintiffs assert two arguments supporting their request that the court set aside the USCIS's decision denying Mr. Valdez's R-1 immigrant visa petition. First, plaintiffs contend that the agency's "ability to pay" requirement (codified at 8 C.F.R. § 214.2(r)(11)) violates RFRA because it substantially burdens their ability to live by their genuinely held religious belief to "live by faith." Second, plaintiffs argue that Iglesia demonstrated to the agency its ability to pay Mr. Valdez, and the agency erred by finding the contrary. The court addresses each argument below. It concludes that neither argument permits the court to set aside the agency's decision.

#### A. The Regulations As Applied Do Not Violate RFRA.

RFRA provides that the government "shall not substantially burden a person's exercise of religion . . . ." 42 U.S.C. § 2000bb-1(a). If the government violates RFRA by imposing a substantial burden on an individual's exercise of religion, the individual is entitled to an exemption unless the government "demonstrates that application of the burden to the person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b); *see also Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2761 (2014) (quoting § 2000bb-1(b)).

Plaintiffs argue that the "ability to pay" requirement imposes a substantial burden on Iglesia's genuinely held religious belief that it "live by faith." Iglesia presented evidence to the agency that it intended to compensate Mr. Valdez through a love offering, collected from parishioners. Because this collection had not yet occurred, Iglesia could not quantify the amount of the love offering with certainty. Plaintiffs argue that the agency's rejection of the proffered love offering as the means for compensating Mr. Valdez conflicts with the church's genuinely held religious belief to "live by faith."

The court disagrees. Here, the "ability to pay" regulation does not impose a substantial burden on plaintiffs' exercise of religion. It contains no prohibition against the use of a love offering to compensate Mr. Valdez, and thus does not prohibit plaintiffs from practicing their genuinely held religious belief to "live by faith." Instead, the regulation merely requires Iglesia to establish that it is able to compensate Mr. Valdez by submitting "verifiable evidence" to establish its ability to pay. 8 C.F.R. § 214.2(r)(11). Such evidence may include, for example, "past evidence of compensation for similar positions" or "budgets showing monies set aside for salaries." § 214.2(r)(11)(i). But the agency concluded that the evidence Iglesia had submitted failed to demonstrate its ability to compensate Mr. Valdez with a love offering. Iglesia provided no evidence of past compensation for similar positions by using a love offering. And, while Iglesia submitted several profit and loss statements that included love offerings as line items in its budget, the agency determined that those statements failed to show actual collection of the love offerings to support this method as a means to pay Mr. Valdez's salary.

The court concludes that the "ability to pay" regulation imposes no substantial burden on plaintiffs' exercise of religion.[4]  It thus rejects plaintiffs' RFRA challenge and concludes that the USCIS's decision applying the "ability to pay" regulation was not contrary to law.[5]

### B. Iglesia Failed to Establish an Ability to Pay Mr. Valdez.

Plaintiffs also argue that the agency erred in its finding that Iglesia lacked the ability to pay Mr. Valdez the proffered compensation.  Defendants respond that the agency's conclusion was not arbitrary and capricious because the administrative record demonstrates that the agency evaluated all evidence that Iglesia submitted and correctly concluded that it did not establish Iglesia's ability to pay.  The court agrees.  The AAO decision notes the agency's review of the various financial records that Iglesia submitted and its determination that these records failed to establish that the church had sufficient funds to pay Mr. Valdez's $26,000 salary.  Indeed, the agency decision explains that many of Iglesia's financial documents show that the church was operating at a net loss.  The decision also describes the church's bank statements, concluding that

---

[4]     Even if the court found that the "ability to pay" regulation substantially burdened plaintiffs' exercise of religion, plaintiffs are not entitled to an exemption unless the government demonstrates that the regulation is the least restrictive means of furthering a compelling government interest.  *See* 42 U.S.C. § 2000bb-1(b).  Defendants argue that they can make this showing because the government has a compelling interest in controlling the admission and residence of aliens in this country, including requiring proof of compensation for religious workers so that they can support themselves financially instead of becoming public charges.  Defendants also argue that the regulation serves to reduce fraud and it is the least restrictive means for doing so.  The court need not reach the issue because it concludes that the regulation does not substantially burden plaintiffs' exercise of religion.

[5]     Plaintiffs also challenge the AAO's statement that it had no discretion to set aside the regulation. Plaintiffs disagree, contending that the USCIS has stated that "[a]n organization or individual who believes that the RFRA may require specific relief from any provision of this regulation may assert such a claim at the time they petition for benefits under the regulation."  Special Immigrant and Nonimmigrant Religious Workers, 73 Fed. Reg. 72276-01, 72283 (Nov. 26, 2008) (to be codified at 8 C.F.R. pts. 204, 214, 299).  Plaintiffs asserted such a claim in the administrative proceeding, consistent with the statement found in the Federal Register.  But this statement does not grant the AAO authority to set aside the existing regulations.  To the contrary, the agency must follow its regulations because they are binding. *See United States v. Nixon*, 418 U.S. 683, 695–96 (1974) (explaining that an agency is bound by its regulations so long as they remain operative).

they show insufficient funds to pay Mr. Valdez the proffered salary. And the decision describes several discrepancies among the various financial documents that Iglesia did not resolve.

Plaintiffs contend that the agency never considered whether the love offering was sufficient to meet the "ability to pay" requirement, but the agency decision shows otherwise. The AAO specifically addressed Pastor Carlos Harrigan's letter describing the biblical basis for the "live by faith" belief. The decision describes the church's historical practice, according to Pastor Harrigan, of collecting a love offering from the congregation and giving it directly to Mr. Valdez without reporting the love offering on Iglesia's financial statements. The AAO noted, however, that Iglesia provided no information about the amount of money purportedly given to Mr. Valdez through the love offering, and it submitted no documentary evidence to support its assertions about the love offering. The AAO acknowledged that the church's profit and loss statements include love offerings as a budgeted item. The 2014 statement includes a budgeted love offering of $2,000 per month for Mr. Valdez, but does not reflect any income generated for this budgeted item. The 2013 statement shows that the church received $12,558 in income for a love offering but does not identify the recipients of the offering. The AAO thus concluded that the record did not include documentary evidence sufficient to support Iglesia's ability to pay Mr. Valdez.

Plaintiffs also argue that the USCIS determined in its November 2011 decision that Iglesia had established an ability to pay Mr. Valdez because the decision stated that Iglesia had submitted all evidence requested by USCIS, addressed only the issue of whether Mr. Valdez's previous employer was the same denomination as Iglesia, and did not raise the issue whether Iglesia was able to compensate Mr. Valdez. The court disagrees with this characterization of the USCIS's 2011 decision. The USCIS's statement that Iglesia had submitted all evidence

requested was not an explicit finding that the submitted evidence established Iglesia's ability to pay Mr. Valdez. Although the USCIS did not address the ability to pay in the November 2011 decision, it did so in a later decision based on the evidence it requested Iglesia to submit, and it explicitly concluded that this evidence failed to establish an ability to pay Mr. Valdez.

After reviewing the relevant evidence, the court agrees with defendants that the USCIS's decision was not arbitrary and capricious. The court thus affirms.[6]

### IV.  Conclusion

For the reasons explained above, the court finds that the AAO decision denying Mr. Valdez's R-1 immigrant visa petition was not arbitrary and capricious or contrary law. The court affirms the agency decision and dismisses the case.

**IT IS THEREFORE ORDERED THAT** plaintiffs' "Brief in Support of Judgment in Favor of Plaintiffs" (Doc. 11) is denied.

**IT IS FURTHERED ORDERED THAT** the United States Citizenship and Immigration Services' ("USCIS") decision denying Mr. Valdez's R-1 immigrant visa petition is affirmed.

**IT IS SO ORDERED.**

**Dated this 21st day of July, 2016, at Topeka, Kansas.**

                                              **s/ Daniel D. Crabtree**
                                              **Daniel D. Crabtree**
                                              **United States District Judge**

---

[6] In their Statement of Facts, plaintiffs state that they argue later in the motion that the "ability to pay" regulation is *ultra vires*. *See* Doc. 11 at 4. But plaintiffs' motion contains no other mention or argument to support this assertion. The court thus deems this argument abandoned.